IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KENA UTTER, AUBREE HOLSAPPLE,** | ) | |
| and **DARA CAMPBELL,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| -vs- | ) | **CIV-16-00182-RAW** |
| | ) | |
| **AMIE COLCLAZIER, JACK CADENHEAD,** | ) | |
| **MICKEY UPTON, and INDEPENDENT** | ) | |
| **SCHOOL DISTRICT NO. I-01 OF** | ) | |
| **SEMINOLE COUNTY, STATE OF** | ) | |
| **OKLAHOMA, a/k/a SEMINOLE SCHOOL** | ) | |
| **DISTRICT,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND BRIEF IN SUPPORT**

Laura L. Holmes
Laura L. Holmgren-Ganz
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile: (405) 528-5800
LHolmes@cfel.com
LGanz@cfel.com
Attorneys for District, Amie Colclazier,
Jack Cadenhead, and Mickey Upton

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF MATERIAL FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT. . . . . . . . . 8

ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    Proposition I: Campbell's Speech Was Not The Motivating Factor
    For Not Re-Hiring Her For the 2015-2016 School Year.. . . . . . . . . . . . . . . 9

    Proposition II:  Defendants Did Not Retaliate Against Utter
    For Her Intermittent FMLA Leave.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    A. Utter failed to give proper notice to Defendants.. . . . . . . . . . . . . . . . . 13
    B. Defendants did not re-hire Utter for reasons unrelated
    to her FMLA claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    Proposition III: Individual Defendants Are Entitled To Qualified Immunity.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    Proposition IV:  Individual Defendants Did Not Tortiously Interfere With
    Plaintiffs' Contracts.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    Proposition V:   Individual Defendants Did Not Violate
    The Open Meeting Act.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

## Cases

*A.M. v. Holmes,* ___ F.3d ___, 2016 WL 3999756 (10th Cir. 2016). . . . . . . . . . . . . . . 16

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510,
     91 L.Ed.2d 202, 211 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bones v. Honeywell International, Inc.,* 366 F.3d 869 (10th Cir. 2004). . . . . . . . . . . 13, 14

*Brammer-Hoelter v. Twin Peaks Charter Acad.,* 492 F.3d 1192, 1202
     (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Brown v. State Farm Fire and Cas. Co.,* 58 P.3d 217, 223 (Okla.Civ.App.2002). . . . . . 18

*Carpenter v. Boeing Co.,* 456 F.3d 1183, 1192 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . 9

*Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552,
     91 L.Ed.2d 265, 273 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Champagne Metals v. Ken-Mac Metals, Inc.,* 458 F.3d 1073, 1093, (10th Cir. 2006). . . . 18

*Clark County Sch. Dist. v. Breeden,* 532 U.S. 268,273, 121 S.Ct. 1508,
     149 L.Ed.2d 509 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Dixon v. Kirkpatrick,* 553 F.3d 1294, 1301 (10th Cir. 2009). . . . . . . . . . . . . . . . . . . . . 10

*Hulen v. Yates,* 322 F.3d 1229, 1237 (10th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Maestas v. Segura,* 416 F.3d 1182, 1188 (10th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . 11

*Martin v. Johnson,* 1998 OK 127, ¶ 30, 975 P.2d 889, 896. . . . . . . . . . . . . . . . . . 18, 19

*McBride v. Citgo Petroleum Corp.,* 281 F.3d 1099 (10th Cir. 2002). . . . . . . . . . . . . 14, 15

*McCook v. Spriner School Dist.,* 2002 WL 1788529, 44 Fed Appx 896,
     168 Ed. Law Rep. 710. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Modica v. Taylor,* 465 F.3d 174 (5th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . 14, 15

*Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). . . . . . . . . 17

*Proctor v. UPS*, 502 F.3d 1200, 1208-09 (10th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . 11

*Ray v. American Nat. Bank & Trust Co. of Sapulpa*, 1994 OK 100, ¶ 15
     894 P.2d 1056, 1060. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Richmond v. Oneok, Inc.,* 120 F.3d 205 (10th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). . . . . . . . 17

*Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). . . . . . . 17

*Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, ¶ 18, 911 P.2d 1205, 1210. . . . . . . . . . 18

*Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 16

## Statutes

25 O.S. §302. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
25 O.S. §304(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
25 O.S. §304(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
25 O.S. §306. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
25 O.S. §313. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
25 O.S. §314(B)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
29 U.S.C.§§2611(3), 2614(2)(B) and 2618. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
29 U.S.C. §2612(e)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
29 U.S.C. §2613. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
29 U.S.C. §2618. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
29 U.S.C. §2615(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
70 O.S. §5-117. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
70 O.S. §5-117 (2) & (3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
70 O.S.§5-117(14). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Rules

Fed. R. Civ. P. 56(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56, Fed. R. Civ. P., Defendants Independent School District No. I-01 of Seminole County, a/k/a Seminole School District ("District"), Amie Colclazier ("Colclazier"), Jack Cadenhead ("Cadenhead"), and Mickey Upton ("Upton") ("Individual Defendants") move for summary judgment in their favor as to the claims set forth in Plaintiffs' Amended Petition in Counts 3, 6, 7 and 8, on the grounds that the pleadings and other evidentiary materials on file herein and filed with this Motion and Brief show that there is no substantial controversy as to any material fact and that Defendants are entitled to judgment as a matter of law.

## STATEMENT OF THE CASE

This action arises out of District's board meeting held on June 11, 2015, in which the rehiring of continuing contract teachers and the employment of temporary teachers for the 2015-2016 school year was on District's board meeting agenda. Plaintiffs were temporary teachers for the 2014-2015 school year whose contracts had expired in May 2015. During the 2014-2015 school year, there was a school bond issue which concerned building a new high school. The town and District's board members' opinions were split about the proposed location of building the new high school. Campbell was in favor of the bond issue and posted her position on Facebook. On March 3, 2015, the bond issue failed. When District hired Utter, Principal Cheatwood ("Cheatwood") and Utter made an agreement that Utter could come in late the mornings that her autistic son had a morning melt-down. However, District's board members were unaware of the agreement.

In the summer of 2014, Colclazier, Cadenhead and Upton began receiving complaints about Plaintiffs from students, parents, staff, and patrons. On multiple occasions, Colclazier, Cadenhead

and Upton had independently expressed their concerns about Plaintiffs to Jeff Pritchard, District's Superintendent ("Pritchard"), and asked him to check on the validity of complaints that they had received. Pritchard talked to Plaintiffs' principals but did not report back with any information about Plaintiffs to Individual Defendants.  Prior to the June 11, 2015 District board meeting, Colclazier, Cadenhead and Upton individually informed Pritchard of their concerns on hiring Plaintiffs. Upton also expressed his concern about hiring Caleb Gordon ("Gordon"), a high school math teacher. Plaintiffs and Gordon were all temporary contract teachers.

Both Pritchard and Plaintiffs' principals had recommended them for hire for the 2015-2016 school year. During the June 11, 2015 board meeting, two separate motions were made concerning the renewal of teacher contracts for the 2015-2016 school year. In the first motion, Cadenhead moved that all of the employees listed in Item 34 (the list included Plaintiffs, Gordon and other teachers) be rehired with the exception of Campbell, Holsapple, and Utter. The first motion excluded Plaintiffs but included Gordon, the high school math teacher and it passed unanimously. In the second motion, Board member Claudia Willis moved that Campbell, Holsapple and Utter be re-hired for the 2015-2016 school year. The second motion failed in a 3-2 board decision (Colclazier, Cadenhead, and Upton  voted "no" on the second motion).  Subsequently, all three Plaintiffs had multiple job offers and were hired by other school districts and a local college within weeks after District's June 11, 2015, Board meeting.

All Plaintiffs asserted breach of contract, deprivation of their due process rights, violation of the Open Meeting Act ("OMA"), and tortious interference with their employment contracts with District for the 2015-2016 school year.  Additionally, Campbell claims deprivation of her First Amendment right under 42 U.S.C. §1983 ("Section 1983"), and Utter claims retaliation for her use

of leave under the Family Medical Leave Act ("FMLA")under Section 1983. In its ruling on Defendants' Partial Motion to Dismiss, the Court dismissed Plaintiffs' claims for breach of contract and deprivation of their due process rights and granted qualified immunity to Individual Defendants in their official capacity. Thus, Plaintiffs' remaining claims Campbell's claim of First Amendment retaliation, Utters claim of retaliation for her use of leave under FMLA, violation of the OMA, and tortious interference with their employment contracts with District for the 2015-2016 school year.

Defendants are entitled to judgment as a matter of law as the undisputed evidence shows that Plaintiffs were temporary teachers whose contracts expired in May 2015. The determination not to rehire Campbell for the 2015-2016 school year was for reasons unrelated to her stand on the bond issue and was not retaliatory for her First Amendment exercise. The determination not to rehire Utter for the 2015-2016 school year was for reasons unrelated to her FMLA claim and not retaliatory for her use of intermittent leave under FMLA. Furthermore, Plaintiffs cannot establish the necessary elements of a claim for tortious interference with a contract or that Individual Defendants violated the OMA.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

For purposes of summary judgment, the following facts are undisputed:

1.      District is a public school located in and a political subdivision of the State of Oklahoma. (Doc. No. 3-3, Amended Petition ¶ 7).

2.      Colclazier, Cadenhead and Upton were school board members of District during the 2014-2015 school year. (Doc. No. 3-3, Amended Petition ¶ 6).

3.      Utter, Holsapple and Campbell were temporary teachers with District during the 2014-2015 school year. Their contracts expired in May 2015. (Doc. No. 3-3, Amended Petition ¶

5: Defendants' Exhibit ("D.Ex.")1, Pritchard Deposition, 34:21-35:2;D.Ex.18 Plaintiffs' Contracts).

4.      Over the course of one year, Colclazier, Cadenhead and Upton received complaints from students, parents, staff and patrons about Plaintiffs. Individual Defendants received complaints about Utter in regards to other teachers having to covering her class, constantly coming in thirty minutes late to work every day and leaving her students without instruction, and failing to have lesson plans prepared for her substitute teachers. They also received complaints about Holsapple's failure to give early notice on a third grade reading test and the trauma caused to children who did not progress to fourth grade, an insensitive attitude, inability to work with special needs students, and shopping on-line during work hours. In September 2014, they began receiving complaints about Campbell being disorganized, unsupportive of FFA and 4H programs, showing animals, and negative Facebook postings about being a Seminole Vocational-Agriculture teacher. (D.Ex.2,Colclazier Deposition 18: 1-10,19:6-16, 20:4-23,21:1-4,36 - 37:19, 42:3-46, 51:14-52; D.Ex.3,Cadenhead Deposition 19:25-20:13, 22:19-23:1, 31:17-32:12, 33:1-5,37:21-25,38:1-13, 39:11-16,46:15-48:11; D.Ex.4, Upton Deposition, 13:10-14:1,10-15:4,16:3-15,23:11- 24:12; D.Ex.17, Cadenhead Affidavit ¶¶2-6).

5.      Cadenhead's daughter attended Wilson Elementary from 2013-2016 where Utter and Holsapple worked. (D.Ex.3, Cadenhead Deposition 21:15-22).

6.      Principal Cheatwood agreed that Utter could come to school late on the mornings that her autistic son had morning melt-downs. (D.Ex.5,Cheatwood Deposition 12:21-14:20).

7.      Utter's son morning melt-downs averaged between 20-30 minutes to a

maximum of one hour. She never took a full day off from work to deal with her son's melt downs. (D.Ex.6, Utter Deposition 21:5-23, 23:9-14).

8.      Colclazier, Cadenhead, and Upton were unaware of Utter's FMLA claim. (D.Ex.2, Colclazier Deposition 35:11-15; D.Ex.3, Cadenhead Deposition 63:18-21; D.Ex.4, Upton Deposition 16:11-15).

9.      Utter was absent 20.6 days (17 full days and 5 half days for sick leave and 2 full days for personal leave) during the 2013-2014 school year and 24.75 days (21 full days and 6 half days for sick leave and 1 full day for personal leave) during the 2014-2015 school year that were unrelated to her FLMA leave. (D.Ex.7, Utter's Attendance Record).

10.      Under the Collective Bargaining Agreement ("CBA"), there are 175 instructional days. (D.Ex. 8, Seminole CBA ).

11.      On December 17, 2014 at a Special Meeting, the Board called for a bond issue to build a new high school in a different location than the existing high school site. An election on the proposed bond was held on March 3, 2015, and the bond issue failed to pass. (D.Ex.9, Special Meeting Minutes dated 12-17-14).

12.      Campbell posted a "Vote Yes" sign on the school bond issue in her yard and made similar postings on Facebook. (D.Ex.11, Campbell Deposition 38:11-18).

13.      Plaintiffs received teacher evaluations from their site principals for the 2014-2015 school year.(D.Ex.12,Osborn Deposition,6:1-8,14:21-15:5; D.Ex.5,Cheatwood Deposition,7:25-8:9).

14.     Plaintiffs received their full salaries from District for the 2014-2015 school year.(D.Ex. 10, District's Payroll Records for Plaintiffs).

15.     According to District's policy 1.6.6, District board is responsible "to apprise the general effectiveness of the schools". (D.Ex.13, District's Policy).

16.     Under the 2014-2015 Collective Bargaining Agreement ("CBA") with Seminole Teachers Association, teacher evaluations are a "mutual endeavor among all teachers, the administrative staff and the Board of Education to improve the quality of the educational program". (D.Ex.8, Seminole CBA).

17.     Colclazier, Cadenhead, and Upton, individually communicated with Pritchard about their concerns of rehiring Plaintiffs for the 2015-2016 school year. Upton also expressed his concern about hiring Caleb Gordon ("Gordon"), one of District's high school math teachers, for the 2015-2016 school year. Over the course of one year, Individual Defendants separately brought forth various concerns about Plaintiffs to Pritchard. In 2014, Colclazier spoke with Pritchard about Holsapple's third grade reading test incident. After the Spring 2015 FFA fundraiser, Colclazier spoke with Pritchard regarding several parent and student complaints that she had received about Campbell being unsupportive with students showing animals. In September 2014, Cadenhead learned about complaints regarding Campbell and shared such complaints with Pritchard on multiple occasions. Also at the beginning of the 2014-2015 school year, Cadenhead received complaints about Utter and Holsapple that had initially started in the previous year. Cadenhead spoke with Pritchard a

couple of times about the complaints on Utter and Holsapple towards the end of the 2014-2015 school year. Over the 2014-2015 school year, Colclazier and Cadenhead shared the complaints that they had received about Plaintiffs. Prior to June 11, 2015, Cadenhead and Upton had a couple of conversations about their concerns about Plaintiffs. On Friday, June 5, 2015, Cadenhead stopped by Pritchard's office expressing his concerns about re-hiring Plaintiffs and asked Pritchard to investigate. That same day, Colclazier called Pritchard expressing her concerns about re-hiring Plaintiffs. She also asked him to investigate the complaints that she had received. Sometime prior to June 11, 2015, Upton called Pritchard after work to discuss his concerns about re-hiring Plaintiffs and Caleb Gordon because of complaints that he had received about all four teachers.  Pritchard did not report back to any Individual Defendants with his findings about Plaintiffs. Colclazier called Pritchard again on June 8, 2016 to see if he had investigated her concerns about Plaintiffs. Pritchard failed to provide Colclazier with any information. (D.Ex.2, Colclazier Deposition,18:1-10,19: 6-16,20: 4-23,  21:1-4,36:1-37:19,  42:3- 44:25, 46:1-25,51:14-52:25: D.Ex.3, Cadenhead Deposition 19:l.-20:13, 22:19-23:1, 31:17-32:12, 33:1-5, 37:21-38:13, 39:11-16,46:15-48:11;and, D.Ex. 4, Upton Deposition 13:10-14:1,10-25, 15:1-4,16: 3-15,23:11-24:12; D.Ex. 17, Cadenhead Affidavit, ¶¶ 2-6).

18.     On the Agenda for the June 11, 2015 District board meeting was the rehiring of teachers for the 2015-2016 school year. (D.Ex.14, 6-11-15 District Agenda).

19.     According to the minutes of the June 11, 2015, District Board meeting item 34,

reflects that two separate motions were made as to the hiring of teachers for the 2015-2016 school year. In the first motion, Cadenhead moved to re-hire teachers for the 2015-2016 school year. His motion included Gordon but excluded Plaintiffs and unanimously passed. In the second motion, Claudia Willis moved to re-hire Plaintiffs for the 2015-2016 school year. The motion failed in a 3-2 vote with Colclazier, Cadenhead and Upton voting "no" on the second motion. (D.Ex.15, District Meeting Minutes of 6-11-15).

20.    Soon after District's June 11, 2015 board meeting, all Plaintiffs had multiple job offers and were hired by other local school districts and local college. (D.Ex.6,Utter Deposition  45:7-46:25;  D.Ex.16,HolsappleDeposition  24:15-25:25,27:12-25: D.Ex.11,Campbell Deposition 47:4-48:19).

21.    Plaintiffs filed a criminal complaint with the Seminole Police Department against Individual Defendants for violation of the OMA. The police investigated their complaint, but the District Attorney found no basis for the claim and no charges were filed. (D.Ex. 16,Holsapple Deposition 31:.24-33:22: D. Ex.11, Campbell Deposition 58: 22-60:17).

**STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT**

Summary judgment is appropriate when the record establishes that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A party asserting that a fact is or is not in dispute must cite to the record including depositions, affidavits, answers to interrogatories, or other materials, and must show that the materials cited by the other party do not establish a genuine dispute, or

must show that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c).

A moving party is entitled to summary judgment as a matter of law when the non-moving party has "failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof". *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). In order to defeat a motion for summary judgment which is properly supported by the evidence, the non-moving party must show that there is a genuine issue of material fact and not merely the existence of some alleged factual dispute between the parties. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986). Mere assertions and conjecture or the existence of a scintilla of evidence in support of a non-movant's position is insufficient to show a genuine issue of material fact; an issue of material fact is genuine only if the non-movant presents facts such that a reasonable jury could find in favor of the non-movant. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1192 (10th Cir. 2006).

## ARGUMENT AND AUTHORITY

**Proposition I: Campbell's Speech Was Not The Motivating Factor For Not Re-Hiring Her For The 2015-2016 School Year.**

Campbell alleges that Defendants retaliated against her for exercising her First Amendment right to freedom of speech under Section 1983. Campbell claims that Defendants retaliated against her position on the school bond issue ( vote "yes") and voted against re-hiring her for the 2015-2016 school year (Doc No. 3-3, Amended Petition ¶75).

The "*Garcetti/Pickering*" test is applied to determine whether a public employee can establish a prima facie case of First Amendment retaliation. *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009); *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007). The *Garcetti/Pickering* test involves five (5) elements: 1) whether the plaintiff spoke pursuant to his official duties; 2) whether the plaintiff's speech touches upon a matter of public concern; 3) the balance between the employee's interest in commenting upon such matters against the interest of the State, as employer, in promoting the efficiency of the public services it performs through its employees; 4) whether the plaintiff can demonstrate that the protected speech was a substantial or motivating factor in the employer's decision to take an adverse employment action against the plaintiff; and 5) whether the employer can show that the adverse employment action would have occurred even in the absence of the protected speech. *Dixon*, 553 F.3d at 1301-02; *Brammer-Hoelter*, 492 F.3d at 1202-03. The first three prongs are issues of law to be decided by the court; the fourth and fifth prongs are factual issues to be decided by the fact finder unless there is no question of material fact. *Dixon*, 553 F.3d at 1303.

For purposes of Defendant's Motion for Summary Judgment only, Defendant admits that Campbell's alleged speech regarding the school bond issue involved a matter of public concern. However, Campbell's claim cannot survive the *Garcetti/Pickering* analysis because she cannot establish that Defendants were motivated by her speech to take any adverse employment action.

In order to establish retaliation, the plaintiff must show that her speech was a substantial or motivating factor in the detrimental or adverse employment decision. *Brammer-Hoelter*, 492 F.3d at 1203. A plaintiff has to "produce evidence linking the employer's action to the employee's speech." *Maestas v. Segura*, 416 F.3d 1182, 1188 (10th Cir. 2005). Speculation, hunches, rumor, and innuendo are insufficient to establish the necessary causal link. *Id.* at 1189. A plaintiff can not sustain the burden on this element "simply by showing that the elimination of the protected activity may have been welcomed by the defendants." *Id.*

While adverse action in close temporal proximity to protected speech may warrant an inference of retaliatory motive, temporal proximity is insufficient, without more, to establish that the speech was a substantial or motivating factor. *Id.* "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'". *Clark County Sch. Dist. v. Breeden,* 532 U.S. 268,273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). Otherwise, the plaintiff mst produce additional evidence to establish causation. *Proctor v. UPS,* 502 F.3d 1200, 1208-09 (10th Cir. 2007). In fact, the Tenth Circuit has held that a three (3) month period between an employee exercising his right and employee's termination is insufficient to show temporal proximity. *Richmond v. Oneok, Inc.,* 120 F.3d 205 (10th Cir. 1997). An employee exercising her rights under the First Amendment does not serve to protect the

employee from legitimate employment actions. *Maestas*, 416 F.3d at 1190.

In this case, Campbell's public statements on the school bond issue were not the motivating factor for the decision regarding her re-employment and were not in temporal proximity to Defendants' decision. District's board called for the bond election on December 17, 2014 with an election date of March 3, 2015. Campbell's speech, "Vote Yes", occurred between the time span of December 17, 2014 and March 3, 2015. Defendant's vote not to re-hire Campbell occurred on June 11, 2015 - - three (3) plus months after Campbell's First Amendment activity. Like *Richmond*, there is no temporal proximity to establish Campbell's prima facie case.

Starting in September 2014, Colclazier, Cadenhead and Upton began receiving complaints from students, parents, and patrons about Campbell's lack of support of certain aspects of District's Ag program, including lack of support of the high school FFA program and 4-H program, lack of support of showing animals, and negative Facebook postings about her job were the motivating factors. On multiple occasions, Cadenhead spoke to Pritchard about the complaints on Campbell. Campbell's position on the District's bond issue **was not** the motivating factor for Defendants not re-hiring Campbell for the 2015-2016 school year; rather, her failure to support District's Ag programs, her negative attitude, and patron complaints were the motivating factors for Defendants' decision. In other words, regardless of Campbell's position on the bond issue, Defendants would have taken the same action - - not re-hiring Campbell for 2015-2016. The uncontroverted facts show that Defendants did

not deprive Campbell of her First Amendment rights under Section 1983. Summary judgment should be granted in favor of Defendants and against Campbell for her First Amendment claim.

**Proposition II:  Defendants Did Not Retaliate Against Utter For Her Intermittent FMLA Leave.**

**A. Utter failed to give proper notice to Defendants.**

Utter claims that Defendants retaliated against her for her intermittent leave under the Family Medical Leave Act ("FMLA").(Doc. No. 3-3, Amended Petition ¶75). During Utter's interview with District, Utter notified Cheatwood that her son was autistic and sometimes had morning melt-downs. Cheatwood agreed that on such mornings that Utter's son had a melt-down, Utter could come in late as long as she notified Cheatwood. Pritchard allowed site principals to deal with FMLA claims. Individual Defendants were unaware of Utter's FMLA claim.

Under the FMLA, District is a political subdivision and is an employer under the act. 29 U.S.C.§§2611(3), 2614(2)(B) and 2618. Under Oklahoma law, only District's school board is empowered to make employment decisions and set policy. 70 O.S. §5-117. An employee must give timely notice to her employer. If leave is unforeseeable, information imparted to employer must be sufficient to give reasonable notice of employee's request as is practicable. 29 U.S.C. §2612(e)(2)(B). See *Bones v. Honeywell International, Inc.,* 366 F.3d 869 (10th Cir. 2004). If an employee's request concerns a family member such as a child, an employer may require certification by a health care provider of the family member. 29

U.S.C. §2613. Additionally, special rules apply to instructional teachers at schools. 29 U.S.C. §2618.

In this case, Utter never informed District's Board of her request for intermittent leave for her son. There was only a verbal agreement between Utter and Cheatwood. Utter was a first grade teacher at District. As an instructional teacher, the amount and timing of her intermittent leave could potentially affect her students. As an employer, District's Board never knew about her request nor had the opportunity to determine if medical certification was necessary or to consider the potential impact of Utter's intermittent leave upon her students. Since Utter failed to properly notify her employer of her FMLA request, she cannot assert a claim under the FMLA. Summary judgment should be granted in favor of Defendants and against Utter.

**B. Defendants did not re-hire Utter for reasons unrelated to her FMLA claim.**

The FMLA, "makes it unlawful for an employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the Act". 29 U.S.C. §2615(a); see also *Bones v. Honeywell Intern., Inc.,* 366 F.3d 869, 877 (10th Cir. 2004)*.* To establish a retaliation claim under FMLA, plaintiff must show that "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions". *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir. 1997). However, if a defendant shows that a plaintiff would have been terminated in the absence of the FMLA request or leave, then no FMLA claim exists.

*McBride v. Citgo Petroleum Corp.*, 281 F.3d 1099 (10th Cir. 2002). The Tenth Circuit has

held "that an employee who requests or is on FMLA leave has no greater protection against

his or her employment being terminated for reasons not related to his or her FMLA request

or leave that he or she did before submitting the request". *Id.* at 1108. On multiple occasions,

the Tenth Circuit has granted summary judgment to employers who terminated employees

for reasons unrelated to a FLMA requests or leave. *Bones v. Honeywell Intern., Inc.,* 366

F.3d 869, 877 (10th Cir. 2004)*; McBride v. Citgo Petroleum Corp.,* 281 F.3d 1099 (10th Cir.

2002)*; Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1325 (10th Cir. 1997)*.*

During Utter's employment with District from 2013-2015, Utter was absent 20.6 days

in 2013-2014 (17 full days and 5 half days for sick leave and 2 full days for personal) and

24.75 days during 2014-2015 (21 full days and 6 half days for sick leave and 1 full day for

personal). Utter admits that she never took a full day because of her son's melt-downs.

Utter's absences were unrelated to her FMLA leave. There are 175 instructional days for

each school year according to the CBA. In the 2013-2014 school year, Utter missed 11% of

the instructional teaching time, and in the 2014-2015 school year, she missed 14% of the

instructional teaching time. At the beginning of the 2014-2015 school year, Individual

Defendants began receiving complaints about Utter's absences that other teachers had to

cover her class and Utter failed to have lesson plans for her substitute teachers. Individual

Defendants were unaware of Utter's arrangement with Cheatwood about coming in late when

Utter's son had a morning melt-down. Individual Defendants asked  Pritchard to investigate

the complaints about Utter; unfortunately, Pritchard never reported back to Individual Defendants any information regarding Utter's absences and tardies.

The uncontroverted evidence shows that the basis of Defendants' vote of nonrenewal of Utter's employment for 2015-2016, concerned the complaints they had received about Utter. High absenteeism, other teachers covering Utter's class, and Utter's failure to leave lesson plans for her substitutes. Individual Defendants had no knowledge of Utter's arrangement with Cheatwood regarding Utter's son morning melt-downs. Since Individual Defendants had no knowledge of Utter's FMLA leave, they cannot retaliate against her for her FMLA leave. Utter was not re-hired for the 2015-2016 school year for reasons unrelated to her FMLA leave. Since the uncontroverted facts show that Defendants actions would have occurred regardless of Utter's FMLA claim, Defendants are entitled to summary judgment in their favor and against Utter as to her FMLA claim.

**Proposition III:       Individual Defendants Are Entitled To Qualified Immunity.**

The defense of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *A.M. v. Holmes,* ___ F.3d ___, 2016 WL 3999756 (10th Cir. 2016), quoting *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010).   Board members may assert the defense of qualified immunity. See*, McCook v. Spriner School Dist.,* 2002 WL 1788529, 44 Fed Appx 896, 168 Ed. Law Rep. 710, (Superintendent and individual board members were entitled to qualified immunity from

a Section 1983 claim that father's speech at board meeting caused his son's expulsion and excluded parents from school property); *Modica v. Taylor,* 465 F.3d 174 (5th Cir. 2006) (Individual Defendants are entitled to qualified immunity for FMLA claim).

When a defendant raises the defense of qualified immunity, a plaintiff must establish that the defendant's conduct violated a federal constitutional or statutory right and that the right was clearly established at the time of the conduct. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003).

In order for Plaintiffs to recover against Individual Defendants in their individual capacity, Plaintiffs must 1) adequately allege a violation of a constitutional right 2) which must be clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (holding that the two step procedure should not be an inflexible requirement).

As more thoroughly discussed above, the uncontroverted facts show that Plaintiffs have failed to establish the violation of any constitutional right (Campbell's First Amendment and Utter's FMLA claim) by Individual Defendants. Even if the Court finds that there were constitutional violations, the law is not "clearly established." The uncontroverted facts fails to show that Individual Defendants' conduct violated clearly established statutory or constitutional rights of which a reasonable person would have known. Campbell's speech

and Utter's FMLA claim were not the motivating factors for Individual Defendants not re-

hiring them for the 2015-2016 school year. Since Individual Defendants had no notice of

Utter's FMLA leave, the law was not clearly established, as to the Individual Defendants, as

to whether Utter even had a FMLA claim.  Accordingly, Colclazier, Cadenhead and Upton

in their individual or personal capacity are entitled to qualified immunity and summary

judgment should be granted in their favor and against Plaintiffs as to the Section 1983 claims

asserted against them.

**Proposition IV:  Individual Defendants Did Not Tortiously Interfere With Plaintiffs'
Contracts.**

Plaintiffs allege that Cadenhead, Colclazier and Upton, unlawfully interfered with

their contractual relationship with District and as a result, they suffered damages.(Doc.No.

3-3, Amended Petition ¶77). To recover in an action for interference with contract or

business relations, a plaintiff must show that: 1) he or she had a business or contractual right

that was interfered with; 2) the interference was malicious and wrongful, and that such

interference was neither justified, privileged nor excusable; and, 3) damage was proximately

sustained as a result of the interference. *Champagne Metals v. Ken-Mac Metals, Inc.*, 458

F.3d 1073, 1093, (10th Cir. 2006); *Brown v. State Farm Fire and Cas. Co.*, 58 P.3d 217, 223

(Okla.Civ.App.2002).  Generally, an agent of a principal to a contract cannot be held liable

for interfering with a contract between the principal and a third party. *Voiles v. Santa Fe*

*Minerals, Inc.*, 1996 OK 13, ¶ 18, 911 P.2d 1205, 1210; *Ray v. American Nat. Bank & Trust*

*Co. of Sapulpa*, 1994 OK 100, ¶ 15, 894 P.2d 1056, 1060; *Martin v. Johnson,* 1998 OK 127,

¶ 30, 975 P.2d 889, 896.

Additionally, it is not unlawful for one to interfere with the contractual relation of another if this is done by fair means, if its accomplished by honest intent and it is done to better one's own business and not to principally harm another." *Id*. at 896. Thus, a corporate officer's interference with a corporate contract will be privileged when the interference is undertaken in good faith and for a bona fide organizational purpose. *Id.* Therefore, every breach of contract does not give rise to a claim of tortious interference with a contract merely because an employee or agent of a party to the contract was involved in the breach. Moreover, the interference with contract tort is not intended to protect against an employee acting in good faith but using poor business judgment. *Id.*

Under Oklahoma law, only the school board may hire and fire its teachers. 70 O.S.§5-117(14). Individual Defendants are on District's board of education and comprise a majority of the five-member board of education. The parties to Plaintiffs' employment contracts are District's school board and each of Plaintiffs individually. Any action approved by the three (3) Individual Defendants is District's action. In a 3-2 vote, Individual Defendants voted not to re-hire Plaintiffs for the 2015-2016 school year, and such decision became District's decision. Since there is no third party, there can be no tortious interference claim. For this reason, Individual Defendants are entitled to summary judgment as to the tortious interference claim.

If the court finds that tortious interference could have existed, then the determinative

issue is whether the actor's interference was justified, privileged, or excusable. The board of education of a school district is empowered to make rules and operate a school as the board deems best suited to the needs of the school district. 70 O.S. §5-117 (2) & (3). According to District's policy, one of the boards duties is "to apprise the general effectiveness of the schools".  The CBA provides that a teacher evaluation is a "mutual endeavor among all teachers, the administrative staff and the Board of Education to improve the quality of the educational program" (Art. XI, §11.1 CBA).

Over the course of a year, Cadenhead, Colclazier and Upton received complaints about Plaintiffs' job performance.  As members of District's Board of Education, they were charged with the duty of assessing the effectiveness of District's school, which included teachers. Plaintiffs received evaluations from their principals and full pay for 2014-2015. Based on the information received, Cadenhead, Colclazier and Upton voted against re-hiring Plaintiffs for the 2015-2016 school year. Individual Defendants actions were undertaken in good faith and for the bona fide organizational purpose of providing quality education to District's students. The uncontroverted facts show that their actions regarding Plaintiffs' employment were undertaken in good faith and privileged. Therefore, Individual Defendants are entitled to  summary judgment on Plaintiffs' claim for tortious interference with their contracts.

**Proposition V:       Individual Defendants Did Not Violate The Open Meeting Act.**

Plaintiffs allege that Defendants violated the Oklahoma Open Meeting Act ("OMA")

on June 11, 2015 and seek declaratory relief. Plaintiffs assert that Individual Defendants agreed outside of the board meeting to vote against hiring Plaintiffs for the 2015-2016 school year (Doc.No.3-3, Amended Petition ¶66).

The OMA states that "[i]t is the public policy of the State of Oklahoma to encourage and facilitate an informed citizenry's understanding of the governmental processes and governmental problems." 25 O.S. §302. A public school board is a "Public Body" under the OMA. 25 O.S. §304(1). Under the Act, a " 'Meeting' means the conduct of business of a public body by a majority of its members being personally together or, as authorized by Section 307.1 of this title, together pursuant to videoconference". 25 O.S. §304(2). Additionally, "[n]o informal gatherings or any electronic or telephonic communications . . . among a majority of the members of a public body shall be used to decide any action or to take any vote on any matter". 25 O.S. §306. Under the OMA, "any action taken in willful violation of this act shall be invalid". 25 O.S. §313. Only declaratory judgment or injunctive relief are available for any civil action filed under the OMA. 25 O.S. §314(B)(1).

In this case, Plaintiffs were temporary teachers whose contracts expired in May 2015. Over the 2014-2015 school year, on multiple occasions, Colclazier and Cadenhead shared the complaints that they had received about Plaintiffs with Pritchard. In the summer of 2014, Colclazier spoke with Pritchard about Holsapple's third grade reading test incident. In September 2014, Cadenhead began receiving complaints about Campbell and spoke to Pritchard about Campbell on multiple occasions. At the beginning of the 2014-2015 school

year, Cadenhead began receiving complaints about Utter and Holsapple. Later in the school year, Cadenhead spoke a couple of times to Pritchard about Utter and Holsapple. After the Spring 2015 FFA fundraiser, Colclazier spoke with Pritchard regarding several parent and student complaints that she had received about Campbell being unsupportive with students showing animals.

Colclazier, Cadenhead, and Upton, individually communicated with Pritchard about their concerns of re-hiring Plaintiffs for the 2015-2016 school year. On Friday, June 5, 2015, Cadenhead stopped by Pritchard's office expressing concerns about re-hiring Plaintiffs and asked Pritchard to investigate. That same day, Colclazier called Pritchard expressing her concerns about re-hiring Plaintiffs. She also asked him to investigate the complaints that she had received. Sometime prior to June 11, 2015, Upton called Pritchard after work to discuss his concerns about re-hiring Plaintiffs and Gordon because of complaints that he had received about all four teachers. Pritchard did not report back to any Individual Defendants with his findings about the four teachers. Colclazier called Pritchard again on June 8, 2016 to see if he had investigated her concerns about Plaintiffs. Pritchard failed to provide Colclazier with any information.

Over the course of a year, Individual Defendants independently received complaints about Plaintiffs from students, parents, staff, and patrons. On multiple occasions, Cadenhead, Colclazier and Upton separately contacted Pritchard prior to the June 11, 2015 board meeting, expressing their concerns about re-hiring Plaintiffs and Gordon, a high school math

teacher, who were all temporary teachers. They never meet together in person, by telephone, text, email, or other social media means to discuss Plaintiffs' employment. Independently, Individual Defendants asked Pritchard to investigate the complaints about Plaintiffs and Gordon.

Rehiring of teachers for the 2015-2016 school year was on District's Agenda for District's June 11, 2015 board meeting. Individual Defendants were present at the June 11, 2015 District Board Meeting. There were two separate motions on the renewal of teacher contracts for the 2015-2016 school year. In the first motion, Cadenhead moved to re-hire teachers for the 2015-2016 school year. Cadenhead's motion included Gordon but excluded Plaintiffs and unanimously passed. In the second motion, Claudia Willis moved to re-hire Plaintiffs for the 2015-2016 school year. The second motion failed in a 3-2 vote with Cadenhead, Colclazier, and Upton voting against the motion. Individual Defendants voted differently on Plaintiffs and Gordon than what concerns they had expressed to Pritchard. In other words, Individual Defendants had not predetermined their vote prior to the June 11, 2015 board meeting because their vote reflects a different outcome than what they had expressed to Pritchard prior to the board meeting.

Plaintiffs also filed a criminal complaint with the Seminole Police Department against the Individual Defendants for violation of the OMA. The police investigated their complaint, but the District Attorney found no basis for their claim and no charges were filed. The uncontroverted facts show that actions taken by Individual Defendants did not violate the

OMA. The vote not to re-hire Plaintiffs for 2015-2016 school year is valid. Thus, Individual Defendants are entitled to summary judgment against Plaintiffs as to the Open Meeting Act claim.

Alternatively, if this court finds that the OMA was violated by Individual Defendants, the law provides that any action taken in willful violation of the OMA is invalidated. According to the June 11, 2015 board minutes, a motion was made to re-hire Plaintiffs for 2015-2016. That motion failed such that no action was taken. Since no action was taken by District's Board of Education regarding Plaintiffs re-employment, there is no action to invalidate based on a determination that the OMA was violated. Moreover, invalidating the vote which sought to rehire Plaintiffs  does not result in the re-employment of Plaintiffs because their contracts expired prior to the June 11, 2015 District board meeting. Thus, Defendants are entitled to summary judgment as to Plaintiffs' claim regarding violation of the OMA.

## CONCLUSION

The uncontroverted material facts in this case show that:

1.    Plaintiffs were temporary teachers in 2014-2015 and their contracts had expired in May 2015;

2.    Campbell's speech was not the motivating factor for not rehiring her for 2015-2016, there was no temporal proximity between Campbell's speech and Defendants vote to not to re-hire, and Defendants did not violate her First

Amendment rights;

3.       Utter failed to give Defendants proper FMLA notice, Individual Defendants

had no knowledge of Utter's FMLA claim and are not employers under the

FMLA, and Defendants did not retaliate against Utter for her FMLA leave;

4.       Cadenhead, Colclazier and Upton are entitled to qualified immunity as to all

of Plaintiffs' Section 1983 claims;

5.       Cadenhead, Colclazier and Upton did not tortiously interfere with Plaintiffs'

contracts with District; and,

6.       Cadenhead, Colclazier and Upton did not meet outside of District's board

meeting and did not violate the Open Meeting Act.

For these reasons, Defendants are entitled to summary judgment as to all remaining

claims in the case.

THE CENTER FOR EDUCATION LAW, P.C.

 S/Laura L. Holmgren-Ganz
Laura L. Holmes, OBA #14748
Laura L. Holmgren-Ganz, OBA #12342
900 N. Broadway, Suite 300
Oklahoma City, OK 73102
Telephone: (405) 528-2800
Facsimile: (405) 528-5800
LHolmes@cfel.com
LGanz@cfel.com
Attorneys for District, Amie Colclazier, Jack
Cadenhead, and  Mickey Upton

## <u>CERTIFICATE OF SERVICE</u>

       I hereby certify that on November 14, 2016, I filed the attached document with the Clerk of Court.  Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the electronic Case Filing System: Heath Merchen

                             S/Laura L. Holmgren-Ganz
                             Laura L. Holmgren-Ganz