IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KENA UTTER, AUBREE HOLSAPPLE, and DARA CAMPBELL, | )<br>)<br>) |
| **Plaintiffs** | )<br>) |
| -vs- | ) CIV-16-00182-RAW<br>) |
| AMIE COLCLAZIER, JACK CADENHEAD, MICKEY UPTON, and INDEPENDENT SCHOOL DISTRICT NO. I-01 OF SEMINOLE COUNTY, STATE OF OKLAHOMA, a/k/a SEMINOLE SCHOOL DISTRICT, | )<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | )<br>) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM**

Plaintiffs, by and through their counsel of record, oppose Defendant's Motion for Summary Judgement as set forth more fully below. The Defendants' Motion asserts contested facts as uncontested, ignores the Defendants' admissions made both in their depositions and discovery, and disregards existing precedent.

**I. Standard of Review**

Under Fed. R. Civ. P. 56, summary judgment is only appropriate if the pleadings and admissible evidence produced during discovery, together with any affidavits, show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Western Diversified Services, Inc. v. Hyundai Motor America, Inc.*, 427 F.3d 1269, 1272 (10th Cir. 2005). An issue is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986). The non-moving party is entitled to all reasonable inferences from the factual record, which is viewed in the light most favorable to the party opposing summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden of persuasion rests squarely on the moving party. *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 980 (10th Cir. 2002).

In the present case, general issues of material fact that exist regarding Plaintiffs' claims, and Defendants' assertions of "uncontroverted" facts are inaccurate, as set forth more fully below.

## II. Plaintiffs' Response to Defendant's Statement of Undisputed Material Facts

1. Uncontested.

2. Uncontested.

3. Uncontested.

4. Contested. Plaintiffs assert that board members never shared concerns about any of the Plaintiffs with Superintendent Pritchard until shortly before the June 11, 2015 board meeting when they informed Superintendent Pritchard of their intent to remove Plaintiffs from the rehire list. (P.Ex.1, Pritchard Deposition, 15:3-23). The allegation that Kena Utter came into work late "every day," is both inaccurate and in conflict with Principal Cheatwood's testimony and Defendant Coclazier's own inconsistent testimony (P.Ex.2, Cheatwood Deposition, 13:8-18; P.Ex.3, Colclazier Deposition, 20:13-23). Contrary to Defendants' assertions, Aubrey Holsapple had no responsibility for making substantive special education decisions, testing, or student placement (P.Ex.2, Cheatwood Deposition, 28:6-14, 12:8-20). In fact, contrary to the assertions in the Defendants' Motion, one board member stated that he was terminating Ms. Holsapple in part because he believed she had an emergency certificate. (P.Ex.4, Upton Deposition, 14:2-24). Defendants have admitted since the deposition that Ms. Holsapple possesses a standard certificate.

(P.Ex.5, Defendant District's Response to Request for Admission No. 3).  The only comments the board members made regarding Dara Campbell's work performance were positive, save for the phone calls to Superintendent Pritchard directly before the June 11, 2015 board meeting.  (P.Ex.6, Campbell Deposition 19: 8-17, 39:1-9; P.Ex.7, Cadenhead Deposition 30:18-15, 31:1-16).

     5.   Uncontested but irrelevant.  Defendant Cadenhead did not express any concerns about any of the three teachers that were related in any manner to his daughter or their interactions with his daughter.  (P.Ex.7, Cadenhead Deposition, 21:1-22).

     6.   Uncontested.  Principal Cheatwood agreed to give Ms. Utter intermittent leave to care for her disabled child.  (P.Ex.2, Cheatwood Deposition, 13:1-15, 32:6-15).

     7.   Uncontested.

     8.   Contested.  Rumors of alleged tardiness were a motivating factor behind the board members' removal of Ms. Utter from the rehire list.  (P.Ex.7, Cadenhead Deposition, 32:3-12; P.Ex.1, Pritchard Deposition, 8:6-24; P.Ex.3, Colclazier Deposition, 46:3-8).  Her tardiness was due to her intermittent FMLA leave used to care for her autistic son, which she had arranged with her principal, Ms. Cheatwood.  (P.Ex.2, Cheatwood Deposition, 13:1-15, 32:6-15).  The board members acted in reckless disregard of Ms. Utter's FMLA rights because they did not interact with her supervisors, review personnel files, and instead became involved in the day to day administration of district personnel matters by determining, based on rumors, to end Ms. Utter's employment.  The board members simply informed the superintendent of how they intended to vote and did not request information.  (P.Ex.1, Pritchard Deposition, 11:17-25, 12:1-25, 13:1-13).

     9.   Contested.  Rumors related to tardiness were the only reasons the board members gave prior to the vote to remove Ms. Utter from the rehire list.  (P.Ex.1, Pritchard Deposition, 13:6-13). The board members testified that they did not review the personnel files or records of Plaintiffs

and that they did not interact with the Plaintiffs' supervisors. (P.Ex.7, Cadenhead Deposition, 41:21-25; P.Ex.4, Upton Deposition, 24:15-25, 25:9-17; P.Ex.3, Colclazier Deposition, 27:17-23). The board members were therefore unaware of Ms. Utter's sick leave usage at the time of the June 11, 2015 board meeting, and any attempt to post hoc rationalize their action with factors that could not have been part of their decision are impermissible. Additionally, Ms. Utter's sick leave usage falls within contractually allocated sick leave and no portion was in any manner questioned or contested. Punishing her for use of contractually guaranteed sick leave constitutes an additional violation of the negotiated agreement if the board members are now, for the first time in this litigation, asserting that use of contractually guaranteed sick leave formed the basis for their decision.

      10. Uncontested

      11. Uncontested.

      12. Uncontested.

      13. Contested to the extent that Plaintiffs' work performance was not evaluated solely by their observing principals as required by law and contract, since the board members evaluated Plaintiffs' work performance based on hearsay without any direct observation and disregarded the principals' direct evaluation when making employment decisions based on Plaintiffs' work performance. (P.Ex.3, Colclazier Deposition, 41:1-22; P.Ex.7, Cadenhead Deposition 21:23-25, 22:1-4; P.Ex.4, Upton Deposition, 26:2-18).

      14. Uncontested.

      15. Contested to the extent that Defendants are attempting to assert that the contractual provision mentioned gives Defendants the right to independently evaluate teachers.

16. Contested to the extent that Defendants are attempting to assert that the contractual provision mentioned gives Defendants the right to independently evaluate teachers.

17. Contested.  The first time board members contacted Superintendent Pritchard about Plaintiffs was directly before the June 11, 2015 board meeting when the board members informed Superintendent Pritchard of their intent to vote not to rehire the teachers.  Contrary to the Defendants' assertions, Superintendent Pritchard was not given the chance to report back to the board members and was not asked for his response when the board members informed him of their intended vote.  (P.Ex.1, Pritchard Deposition, 11:3-25, 12:1-25, 13:1-3).

18. Uncontested.

19. Uncontested.

20. Uncontested, but clarified to the extent that the job offers were not commensurate with pay and were located a significant distance from their residences.

21. Contested.  No charges have yet been pursued.  The District Attorney for Seminole County referred the matter to the Oklahoma Attorney General's Office for review.

### III.   Plaintiffs' Statement of Additional Uncontested Facts

22.  During the course of the 2014-2015 school year, Plaintiff Dara Campbell informed her Superintendent, Jeff Pritchard, that she felt intimidated by board member Jack Cadenhead due to Defendant Cadenhead's direct interactions with her regarding the bond issue.  (P.Ex.1, Pritchard Deposition, 18:5-25).

23. Defendant Jack Cadenhead disagreed with Facebook postings Ms. Campbell made regarding the bond issue and directly interacted with her via electronic messaging regarding his disagreement.  (P.Ex.7, Cadenhead Deposition, 30:3-14).

24. The Seminole School District's normal mode of handling accommodation requests and Family Medical Leave requests was for the site supervisor to directly and informally interact with the employee and to handle the issue at the building level. (P.Ex.1, Pritchard Deposition, 26:13-24; P.Ex.2, Cheatwood Deposition, 32:6-18).

25. Principal Denise Cheatwood interacted directly with Kena Utter regarding Ms. Utter's need for intermittent leave to care for her autistic child prior to Ms. Utter taking any leave and Principal Denise Cheatwood made arrangements for Ms. Utter to call on days when she would be late due to her need to care for her child's disability. (P.Ex.2, Cheatwood Deposition, 13:5-18).

26. Defendant Board Member Amie Colclazier contacted Superintendent Pritchard directly before the June 11, 2015 school board meeting and informed him she was the "swing vote" with respect to Plaintiffs' rehire. (P.Ex.1, Pritchard Deposition, 8:2-24).

27. Superintendent Pritchard testified that the only way Amie Colclazier could have believed she was the "swing" vote was if the board members had discussed the vote to remove Plaintiffs from the rehire list outside of the board meeting. (P.Ex.1, Pritchard Deposition, 12:1-24, 13:1-5).

28. Superintendent Pritchard testified that directly before the June 11, 2015 board meeting, Defendant Board Member Mickey Upton contacted Superintendent Pritchard and stated that he was going to vote not to rehire teachers. Superintendent Pritchard asked if they were the same teachers Jack Cadenhead and Amie Colclazier had contacted him about and Defendant Upton responded that they were the same teachers. At no point did Superintendent Pritchard identify the teachers by name during that conversation. (P.Ex.1, Pritchard Deposition, 12:1-24, 13:1-5).

29. Superintendent Pritchard testified that the only way Defendant Upton could have known that he was talking about the same teachers Defendant Colclazier and Defendant

6

Cadenhead contacted Superintendent Pritchard about was if Defendant Upton had talked to the other board members outside of the board meeting about the rehire. (P.Ex.1, Pritchard Deposition, 12:1-24, 13:1-5).

30. Defendant Board Member Jack Cadenhead contacted both Defendant Board Members Amie Colclazier and Mickey Upton outside of school board meetings and discussed the Plaintiffs. (P.Ex.7, Cadenhead Deposition, 23:14-23, 24:6-25; P.Ex.4, Upton Deposition, 15:20-25, 16:1-15).

31. Defendant Jack Cadenhead was an attorney representing a staff member who worked at the same school as Kena Utter and Aubrey Holsapple. (P.Ex.7, Cadenhead Deposition, 19:4-10) During the course of that representation, and as part of that representation, Defendant Cadenhead's client shared the client's displeasure with Kena Utter and Aubrey Holsapple. (P.Ex.7, Cadenhead Deposition, 18:21-25, 19:1-24). Defendant Cadenhead represented that the information shared by his client during the course of his representation of that client regarding Ms. Utter and Ms. Holsapple formed the basis for his vote not to rehire Kena Utter and Auburey Holsapple. (P.Ex.7, Cadenhead Deposition, 18:21-25, 19:1-24).

32. Defendant Cadenhead did not recuse himself from the vote regarding the rehire of Plaintiffs, despite the fact that he was representing a private client whose interests were adverse to Kena Utter and Aubrey Holsapple and did not disclose the conflict of interest to the school board.

### IV.     Response To Defendants' "Motivating Factor" Assertion

The Defendants' arguments related to the alleged "motivating factors" behind the Defendants' actions are all predicated on contested factual issues. Defendant Jack Cadenhead directly contacted Dara Campbell about her stance on the bond issue and tried to change her opinion. (P.Ex.7, Cadenhead Deposition, 30:3-14). Despite the fact that in his deposition he stated that it would be inappropriate for him to directly contact staff about school related issues except

7

through the superintendent, he felt so strongly about the bond issue that he contacted her in an attempt to change her position and keep her from posting information about the bond issue with which he disagreed. (P.Ex.7, Cadenhead Deposition, 30:3-14, 42:1-13). Ms. Campbell told Superintendent Prichard that she felt intimidated by Defendant Cadenhead's interactions regarding the bond issue. (P.Ex.1, Pritchard Deposition, 18:5-25). In addition, both Defendant Cadenhead and Defendant Colclazier directly told Dara Campbell that she was doing an excellent job, contradicting their after-developed justification relating to work performance. (P.Ex.6, Campbell Deposition, 19:8-17, 39:1-9; P.Ex.7, Cadenhead Deposition 30:18-15, 31: 1-16). Ms. Campbell had positive evaluations and there was no objective evidence available to justify the board's action. (P.Ex.8, Osborne Deposition, 6:2-25). "Evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination." *Fischbach v. District of Columbia Dep't. of Corr.,* 86 F.3d 1180, 1183 (D.C.Cir.1996). These facts establish a direct link between the board members' actions and Ms. Campbell's first amendment speech.

With respect to Defendants' temporal proximity argument, the Defendants did not immediately retaliate by actively terminating during the course of Ms. Campbell's contract because they had no lawful justification for doing so given the Plaintiff's excellent evaluations. Instead, the Defendants waited two and a half months for the end of the contracts and were absolutely silent at the board meeting as to their reasons for nonrenewal, not sharing any information on the record or in executive session, likely believing silence could shield their improper motives. Plaintiffs contend, under the circumstances, that Defendant Cadenhead's direct attempted intimidation of Dara Campbell regarding the bond issue and the absence of any other negative interaction regarding her performance is sufficient to establish that her speech was a

motivating factor, especially when coupled with the fact that Defendant Cadenhead and Defendant Coclazier did nothing but compliment Ms. Campbell's work performance during the school year and that her evaluations were excellent.

## V.     Response to Defendant's Argument Relating to Family Medical Leave Act Notice Requirements

Contrary to the Defendants' assertion, an employee is not required to specify that her request for leave is covered by the FMLA in order to come within its provisions. *See Manuel v. Westlake Polymers Corp.,* 66 F.3d 758, 761–64 (5th Cir.1995) (holding that an employee requesting medical leave is not required to even mention the FMLA when requesting leave); the FMLA does not require an employee to invoke language of the statute to gain its protection when notifying her employer of the need for leave. *McClain v. Southwest Steel Co., Inc.,* 940 F.Supp. 295 (N.D.Okla.1996); *Brenneman v. MedCentral Health System* (C.A.6 (Ohio), 04-26-2004) 366 F.3d 412, rehearing *en banc denied and certiorari denied,* 125 S.Ct. 1300, 161 L.Ed.2d 107.

Furthermore, notification to a supervisor is sufficient to put an employer on notice of an employee's need for FMLA leave; there is no requirement that a request be made directly to the employer's governing board. *See Wages v. Stuart Management Corp.*, 798 F. 3d 675 (8th Cir. 2015). In fact, at the time of these allegations it was the standard policy and practice of the Seminole School District to handle accommodation and FMLA requests at the building level. (*See* P.Ex.1, Deposition of Pritchard). Finally, whether an employee gave sufficient information to put his or her employer on notice that an absence may be covered by the FMLA is a question of fact for the jury. *Clinkscale v. St. Therese of New Hope,* 701 F.3d 825, 827 (8th Cir.2012).

Additionally, for a valid FMLA claim, the employee need not show any discriminatory intent by the employer. *Pulczinski v. Trinity Structural Towers, Inc.,* 691 F.3d 996, 1005 (8th Cir. 2012). *See also Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1050 (8th Cir. 2006) ("[A]n

9

employee must show only that he or she was entitled to the benefit denied." (internal quotation marks omitted)).   A plaintiff establishes an FMLA retaliation claim by "showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Culver v. Gorman & Co.,* 416 F.3d 540, 545 (7th Cir. 2005). "A motivating factor does not amount to a but-for factor or to the only factor, but is rather a factor that motivated the defendant's actions." *Id.* (quoting *Spiegla v. Hull,* 371 F.3d 928, 942 (7th Cir.2004)).

In the present case, each of the Defendants admitted in their depositions that rumors surrounding Kena Utter's tardiness formed the basis of their decision not to rehire.  Each also expressly admitted that they did not review any employment files, district records, or evaluations when making their determination, rendering irrelevant any arguments about sick leave records. Kena Utter was exercising her FMLA rights according to the arrangements made between her and Principal Cheatwood and was retaliated against because of her exercise of those rights.

### VI.      Response to Defendants' Immunity Assertions

The Defendants attempt to argue they qualify for immunity by mischaracterizing contested factual issues surrounding the motivation underlying the Defendants' adverse employment action as uncontested.   Specifically, the Defendants' brief alleges that the exercise of rights under the first amendment and under the FMLA were not "motivating factors," which are very clearly contested factual issues.  Whether the Defendants' post-hoc justification is sufficient is a question of fact for the jury and an issue which is highly contested and suspect.  *Tyler v. Re/Max Mountain States, Inc.,* 232 F.3d 808, 813 (10th Cir.2 000) ("We are disquieted ... by an employer who 'fully' articulates its reasons for the first time months after the decision was made.").   No rationale was ever given on the record or in executive session and the first time any rationale was disclosed to Plaintiffs by Defendants was during their depositions.

Plaintiffs clearly contend and have proffered evidence that Dara Campbell's speech was in fact a motivating factor behind Defendants' removal of her name from the rehire list and that Kena Utter's tardiness due to her intermittent leave to care for her autistic child was a motivating factor behind the Defendants' removal of her name from the rehire list.  Furthermore, the fact that the Defendants' rumor-based evaluation of Plaintiffs' work quality and certification directly contradicts the statutory evaluation by their principals bears directly on the credibility of the Defendants' proffered reasons.  "Evidence indicating that an employer misjudged an employee's performance or qualifications is, of course, relevant to the question whether its stated reason is a pretext masking prohibited discrimination." *See Fischbach,* 86 F.3d 1180, 1183.

Contrary to Defendants' assertion, qualified immunity shields government officials from liability for damages "insofar as their *conduct* does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  An argument about whether some class of defendants is subject to liability under a statute has no connection to rules of conduct imposed by that statute. Whether or not Defendants can be sued under the FMLA or 1983, the rules governing their *conduct* and the necessity of honoring an employee's first amendment and FMLA rights are clear. *Gray v. Baker,* 399 F.3d 1241, 1246 (10th Cir.2005); *Darby v. Bratch,* 287 F.3d at 681 (8th Cir. 2002).  In fact, the Tenth Circuit Court of Appeals has directly addressed the issue of immunity for individuals being sued under the FMLA, and held that immunity does not shield the individual government representative from liability.  *Cornforth v. University of Oklahoma Bd. Of Regents*, 263 F. 3d 1129, 1133 (10th Cir. 2001). Additionally, the right of an individual school employee to be free from retaliation for exercising her first amendment right by speaking publicly about issues related to school finance has been clearly established since *Pickering v. Board of Ed.,* 391 U.S.

563, 88 S. Ct. 1731, (1968). *Andersen v. McCotter*, 100 F.3d 723, 729 (10th Cir. 1996). *See also Williams v. Kentucky,* 24 F.3d 1526, 1533–38 (6th Cir.1994). Defendants have already conceded that Plaintiff Dara Campbell's speech touched upon an issue of public concern.

## VII. Response to Defendants' Arguments Related to Tortious Interference with Contract

Contrary to Defendants' assertion, an entity's director can be held liable for tortiously interfering in a corporate contract. *Martin v. Johnson*, 1998 OK 127, 975 P.2d 889 (1998). *See also Q.E.R., Inc. v. Hickerson,* 880 F.2d 1178, 1184 (10th Cir.1989) (applying Colorado law); *Allison v. American Airlines, Inc.,* 112 F.Supp. 37, 38 (N.D.Okla. 1953). If a corporate director interferes with a contract of his or her own entity, the director can only escape liability if the interference is undertaken in good faith and for a bona fide organizational purpose. *Supra Martin* at 896. In the present case, none of the actions were taken in good faith; to the contrary, they were taken in violation of the first amendment, the FMLA, the Open Meetings Act, statutory evaluation restrictions, contractual requirements, administrative code limits on school board authority, and based on information gleaned by an attorney board member with a conflict of interest who was simultaneously representing a school district employee who wanted two of the Plaintiffs fired. Plaintiffs have sufficiently alleged that the Defendant board members' actions were not for any bona fide purpose and not in good faith.

## VIII. Response to Defendants' Arguments Related to the Open Meetings Act

Plaintiffs have alleged that Defendant Jack Cadenhead interacted with Defendants Amie Colclazier and Mickey Upton regarding Plaintiffs rehire outside of and prior to the June 11, 2015 board meeting, violating the Open Meetings Act, 25 O.S. § 301 *et seq*. Contrary to Defendants' assertions, Plaintiffs contend that there were no community, parent, or staff complaints that would

justify termination and that the board members' independent evaluation of Plaintiffs' performance was unlawful and in violation of the negotiated agreement. (P.Ex.1, Pritchard Deposition, 7-9, 14-15). Furthermore, the interactions with Superintendent Pritchard make it clear that Defendant board members conferred about the vote; each was aware of how the other two Defendant board members were voting; the three Defendant board members discussed the issues in depth outside of any public meeting; the three board members arrived at their decision before the meeting was ever called into session; and they considered evidence never introduced or disclosed at any meeting or in any executive session**.** (P.Ex.1, Pritchard Deposition, 12:1-24, 13:1-5). As the Attorney General noted in 1981 OK AG 69:

> Permitting a single member of the governing body to obtain a consensus or vote of that body by privately meeting alone with each member, would be to condone decision making by public bodies in secret, which is the very evil against which the Open Meeting Act is directed. The Open Meeting Act's prohibition against this type of decision making is not dependent upon whether a majority of the members of a governing body gather together at the same place at the same time in the presence of each other.

1981 OK AG 69.

Once it is established that the Open Meetings Act was violated, Defendants are incorrect in asserting that Plaintiffs would remain unemployed. Oklahoma courts addressing Open Meetings Act violations do not look to a specific line item that is invalidated, but instead invalidate the course of proceedings which the willful violation effected. *Matter of Order Declaring Annexation Dated June 28, 1978, Issued by Frazier,* 637 P.2d 1270, 1275, 1981 OK CIV APP 57, ¶32. For instance, in invalidating an annexation due to multiple open meetings violations, the court in the above-cited decision simply ruled that all general actions leading to the annexation were invalidated. *Id.* ("Having found that the Open Meeting Act applies to the instant case, having found that the Act was violated, and having found that the violations were willful, we hold that the

actions leading to and effectuating the annexation of Oglesby School District by Caney Valley School District were invalid under 25 O.S.Supp. 1977 § 313 .").  The same approach should hold true in the present case, given that the intent of the board members and the motivation underlying their open meetings act violations were to have the Plaintiffs removed from the rehire list without having to disclose publicly or in executive session the reasons for doing so.  Hence, the appropriate remedy is to find that the Plaintiffs were not removed from the rehire list.

### IX.  Conclusion

For the above reasons, Plaintiffs request that Defendants' Motion be denied.

/sHeath Merchen\
Heath Merchen, OBA #19391\
323 E. Madison\
Oklahoma City, OK  73105\
Telephone: (405)528-7785\
Facsimile:  (405)523-4392\
hmerchen@okea.org\
Attorney for Plaintiffs

### CERTIFICATE OF MAILING

This is to certify that on November 28, 2016, a true and correct copy of the above and foregoing pleading was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all attorneys of record.

Laura L. Holmes, OBA #14748\
Laura L. Holmgren-Ganz, OBA #12342\
900 N. Broadway, Suite 300\
Oklahoma City, OK 73102\
LHolmes@cfel.com\
LGanz@cfel.com\
Attorneys for District

s/Heath Merchen\
Heath Merchen, OBA #19391