# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. KENA UTTER,<br>2. AUBREE HOLSAPPLE, and<br>3. DARA CAMPBELL,<br><br>    Plaintiffs,<br><br>    v.<br><br>1. AMIE COLCLAZIER,<br>2. JACK CADENHEAD,<br>3. MICKEY UPTON, and<br>4. INDEPENDENT SCHOOL DISTRICT NO. I-01 OF SEMINOLE COUNTY, STATE OF OKLAHOMA, a/k/a SEMINOLE SCHOOL DISTRICT,<br><br>    Defendants. | Case No. CIV-16-182-RAW |

## ORDER

Before the court is Defendants' motion for summary judgment [Docket No. 26] as to all remaining claims. After the court's October 27, 2016 Order granting Defendants' partial motion to dismiss, the remaining claims are as follows: (1) claim by all Plaintiffs against all Defendants for violation of the Open Meeting Act, 25 OKLA. STAT. § 303, *et seq.* (hereinafter "OMA"); (2) claim by all Plaintiffs against the individual Board Members for intentional interference with prospective business interests; (3) § 1983 claim by Dara Campbell against all Defendants for violation of her First Amendment rights; and (4) § 1983 claim by Kena Utter against all Defendants for violation of the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* (hereinafter

"FMLA"). The § 1983 claims against the individual Board Member defendants are in their individual capacities only. They assert qualified immunity as to those claims.

**SUMMARY JUDGMENT AND QUALIFIED IMMUNITY**

Summary judgment will be granted if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. Burke v. Utah Transit Auth. & Local 382, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiffs may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of their Amended Petition. Id.

When a defendant raises a qualified immunity defense in response to a motion to dismiss or a motion for summary judgment,[1] the burden shifts to the plaintiff and the court employs a two-part test. Morris v. Noe, 672 F.3d 1185, 1191 (10th Cir. 2012); Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011). A plaintiff must show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged misconduct.[2] Id. A plaintiff must establish both prongs to defeat a qualified immunity defense. Id. The court has discretion to decide which of the two prongs to address

---

[1] "The legally relevant factors for a qualified immunity decision will be different at the summary judgment state – no longer can the plaintiffs rest on facts as alleged in the pleadings." Stonecipher v. Valles, 759 F.3d 1134, 1148, n.9 (10th Cir. 2014).
[2] The court is not to "define clearly established law at a high level of generality." City and Cnty. of San Francisco, Calif. v. Sheehan, 135 S.Ct. 1765, 1775-76 (2015).

2

first in light of the circumstances of the case.  Brown, 662 F.3d at 1164.  Only if a plaintiff first meets this two-part test does the defendant bear the traditional summary judgment burden to show that there are no genuine disputes of material fact and that she is entitled to summary judgment as a matter of law.  Kock v. City of Del City, 660 F.3d 1228, 1238 (10th Cir. 2011).

**UNDISPUTED MATERIAL FACTS**

The Seminole School District (hereinafter "School District") is a political subdivision of the State of Oklahoma.  The individual defendants, Ms. Colclazier, Mr. Cadenhead and Mr. Upton, were Board Members during the 2014 – 2015 school year.  Plaintiffs, Ms. Utter, Ms. Holsapple and Ms. Campbell, were temporary teachers during the 2014 – 2015 school year.

The individual defendants testified that over the course of the school year, they received several complaints about Plaintiffs.  Plaintiffs argue that the individual defendants did not voice any complaints to the superintendent until shortly before the June 11, 2015 Board meeting.

- The complaints about Ms. Utter included frequent tardiness, leaving students without instruction and failing to have lesson plans prepared for substitute teachers for her frequent times away from class.  Plaintiff Utter argues that she was not late "every day."
- The complaints about Ms. Holsapple included failure to give notice on a third grade reading test causing children not to progress to the fourth grade, an insensitive attitude, an inability to work with special needs students and online shopping during work hours.  Ms. Holsapple argues that she had no responsibility for making substantive special education decisions, testing or student placement.  Plaintiff Holsapple also points out that Defendant Upton stated he voted against rehiring Ms. Holsapple because he did not believe she had the proper certification.

3

- The complaints about Ms. Campbell included disorganization, being unsupportive of FFA and 4H programs and showing animals and negative Facebook postings about being a Seminole Vocational-Agriculture teacher. Ms. Campbell argues that the only comments the individual defendants made regarding Ms. Campbell's work performance were positive, save for the calls to the superintendent directly before the June 11, 2015 Board meeting.

Ms. Utter's principal agreed that she could come to school late on mornings that her autistic son had morning meltdowns. The School District's normal mode of handling FMLA requests was for the site supervisor to directly and informally handle them. Her son's morning meltdowns averaged between 20-30 minutes to a maximum of one hour. She never took a full day off from work to deal with her son's meltdowns. The individual defendants were unaware of the agreement between Ms. Utter and the principal. As noted above, however, they had heard complaints of her frequent tardiness.

On December 17, 2014, at a special meeting the Board called for a bond issue to build a new high school in a different location than the existing site. An election on the proposed bond was held on March 3, 2015. The bond issue did not pass. Ms. Campbell posted a "Vote Yes" sign on the school bond issue in her yard and made similar postings on Facebook. Mr. Cadenhead tried to convince Ms. Campbell's not to support it.

Plaintiffs each received evaluations from their principals for the 2014 – 2015 school year. Plaintiffs argue that the individual defendants disregarded the principals' evaluations and based their votes on hearsay. Plaintiffs received their full salaries from the 2014 – 2015 school year.

The School District's policy makes the Board responsible "to apprise the general effectiveness of the schools." Under the 2014 – 2015 Collective Bargaining Agreement with the

Seminole Teachers Association, teacher evaluations are a "mutual endeavor among all teachers, the administrative staff and the Board of Education to improve the quality of the education program." Plaintiffs argue neither provision gives the Board Members the right to independently evaluate teachers.

On the Agenda for the June 11, 2015 Board meeting was the rehiring of teachers for the 2015 – 2016 school year. According to the minutes of the June 11, 2015 meeting, two separate motions were made as to the rehiring of teachers for the 2015 – 2016 school year. In the first motion, Mr. Cadenhead moved to rehire teachers for the 2015 – 2016 school year, excluding Plaintiffs. The motion passed unanimously. In the second motion, another board member moved to rehire Plaintiffs for the 2015 – 2016 school year. The motion failed in a 3 – 2 vote, with the individual defendants voting "no."

Before the June 11, 2015 Board meeting, Ms. Colclazier contacted the superintendent and informed him she was the "swing vote" as to the Plaintiffs' rehire. The superintendent also testified that before the Board meeting, Mr. Upton contacted him and stated that he was voting not to rehire teachers. The superintendent asked if he was referring to the same teachers he had discussed with Mr. Cadenhead and Ms. Colclazier. Mr. Upton responded that they were the same teachers. Mr. Cadenhead testified that he discussed Plaintiffs with Mr. Upton possibly once and with Ms. Colclazier possibly at some point throughout the school year regarding complaints they received. One of the people who complained to Mr. Cadenhead about Plaintiffs was a fellow teacher who was represented by Mr. Cadenhead on a separate matter.

Soon after the June 11, 2015 Board meeting, all Plaintiffs were hired at other schools. Plaintiffs argue that their new jobs were not commensurate with their previous pay and were located significantly farther from their residences.

5

**FEDERAL CLAIMS**

*§ 1983 Violation of First Amendment*

Plaintiff Campbell brings this claim against all Defendants. The court first analyzes whether she has established her claim. The individual defendants have raised the defense of qualified immunity. The court addresses this defense as to each individual defendant below.

Plaintiff Campbell seeks relief against Defendants for deprivation of her First Amendment rights. She alleges that the decision not to rehire her was in retaliation for her exercise of the right to freedom of speech under the First Amendment, specifically her speech regarding the school bond issue. The "First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern" and that "a public employer cannot retaliate against an employee for exercising [her] constitutionally protected right of free speech." Couch v. Board of Trustees of Memorial Hosp. of Carbon Cnty., 587 F.3d 1223, 1235 (10th Cir. 2009) (citing, *inter alia*, Garcetti v. Ceballos, 547 U.S. 410, 410 (2006) and Pickering v. Board of Educ., 391 U.S. 563, 568 (1968)).

When such a claim is alleged, courts apply the Garcetti/Pickering test, which consists of the following five prongs:

> First, the court must determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created. Second, if an employee does not speak pursuant to his official duties, but instead speaks as a citizen, the court must determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry ends. Third, if the employee speaks as a citizen on a matter of public concern, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer. Fourth, assuming the employee's interest outweighs that of the employer, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision. Finally, if the employee establishes that his speech was such a factor, the employer may

>demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

Id. (citation omitted).

For purposes of the summary judgment motion, Defendants admit that Ms. Campbell's alleged speech regarding the school bond issue involved a matter of public concern.[3] Defendants argue, however, that Ms. Campbell's claim cannot survive the Garcetti/Pickering analysis because she cannot establish that Defendants were motivated by her speech to take any adverse employment action. To establish that her speech was a motivating factor in the Board's decision not to rehire her, Ms. Campbell must show that her "protected speech played a substantial part in the [Board's] decision." Maestas v. Segura, 416 F.3d 1182, 1188 (10th Cir. 2005). She "must produce evidence linking the [Board's] action to [her] speech." Id. "Speculation or hunches amidst rumor and innuendo will not suffice." Id. at 1189. She cannot sustain this burden "simply by showing that the elimination of the protected activity may have been welcomed by the defendants." Id.

Plaintiff Campbell has not met her burden. She has not established that her speech was a motivating factor in the Board's decision not to rehire her. The Complaints the individual defendants heard about Ms. Campbell included that she was disorganized, that she was unsupportive of FFA and 4H programs and showing animals and that she made negative Facebook postings about being a Seminole Vocational-Agriculture teacher. She has not argued that any Board Member other than Mr. Cadenhead disagreed with her stance on the bond issue. She has shown that Mr. Cadenhead tried to change her mind on the issue and perhaps made her uncomfortable. She has not shown, however, that her speech on that issue, an issue that was decided more than three months prior to the June 11, 2015 Board meeting, had *any* influence on

---

[3] Defendants do not specifically mention the first or third prong, but apparently admit those as well for purposes of the summary judgment motion.

the Board's decision not to rehire her, much less on Mr. Cadenhead's vote. She certainly has not shown that her speech played a substantial part in the Board's decision, in Mr. Cadenhead's vote or in any other Board member's vote including those of the other individual defendants. Accordingly, she has failed to establish a claim for violation of her First Amendment rights. Defendants' motion for summary judgment is granted as to this claim.

### *Qualified Immunity – Colclazier, Cadenhead and Upton*

The individual defendants have raised the defense of qualified immunity. The burden then shifts to Plaintiff Campbell to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged misconduct. As the court held above, Ms. Campbell has not shown that any of the Defendants violated a constitutional right.

Moreover, as to whether the alleged infringed right was clearly established, the court is not to "define clearly established law at a high level of generality." Sheehan, 135 S.Ct. at 1775-76. With regard to Mr. Cadenhead, Plaintiff Campbell has cited to no authority showing she has a clearly established constitutional right that would prevent him from voting on whether to rehire her after he disagreed with her on a bond issue. With regard to Ms. Colclazier and Mr. Upton, Ms. Campbell has cited no authority showing she has a clearly established right that would prevent them from voting on whether to rehire her after a fellow board member disagreed with her on a bond issue. Plaintiff Campbell has not met her burden to show that any of the individual defendants violated her clearly established constitutional rights. Accordingly, Mr. Cadenhead, Ms. Colclazier and Mr. Upton are entitled to qualified immunity.

8

*§ 1983 Violation of FMLA*

Plaintiff Utter brings this claim against all Defendants. The court first analyzes whether she has established her claim. The individual defendants have raised the defense of qualified immunity. The court addresses this defense as to each individual defendant below.

In analyzing a claim of retaliation under the FMLA, the court utilizes the burden-shifting approach set out in McDonnel Douglas Corp. v. Green, 411 U.S. 792 (1973). To establish her claim for retaliation under the FMLA, Ms. Utter must show that: "(1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions." Morgan v. Hilti, Inc., 108 F.3d 1310, 1325 (10th Cir. 1997). If she establishes a *prima facie* case, the burden then shifts to Defendants to show a legitimate nondiscriminatory reason for the adverse action. Campbell v. Gambro Healthcare, Inc., 478 F.3d 1282, 1290 (10th Cir. 2007). If Defendants meet this burden, the burden shifts back to Plaintiff to show the reason is pretextual. Id.

Plaintiff has met the first prong. She availed herself of a protected right under the FMLA. As to the second prong, she was adversely affected by the decision not to rehire her. As to the third prong, the individual defendants testified they decided not to rehire her based on complaints regarding her frequent tardiness, leaving students without instruction and failing to have lesson plans prepared for substitute teachers for her frequent times away from class. It is uncontested that the Board Members were unaware of Ms. Utter's FMLA arrangement with her principal. They had no retaliatory intent. The Tenth Circuit has "characterized the showing required to satisfy the third prong under a retaliation theory to be a showing of *bad intent* or '*retaliatory motive*' on the part of the employer." Id. at 1287 (emphasis added). Plaintiff has not shown any bad intent or retaliatory motive by the School Board or any individual defendant and

9

thus has failed to meet the third prong.[4]  She failed to establish a *prima facie* claim of retaliation under the FMLA.

Assuming, alternatively, that Ms. Utter has established a *prima facie* case based on the fact that the fact the Board Members voted against rehiring her in part because of her tardiness albeit without knowledge of her FMLA request, the burden then shifts to the Defendants to show a legitimate nondiscriminatory reason for their decision.  Defendants have met this burden.  In addition to her frequent tardiness, the individual defendants received complaints about Ms. Utter often leaving her students without instruction and prepared lesson plans for the substitute teachers.  In order to fulfill her job requirements, a teacher who knows she will be tardy or absent often would need to be prepared in advance.  According to the complaints received by the Defendants, she was not fulfilling her job requirements and her students suffered.  Defendants had a legitimate nondiscriminatory reason for their decision not to rehire her.  Ms. Utter has not shown that reason to be pretextual.  Defendants' motion for summary judgment is granted as to this claim.

### *Qualified Immunity – Colclazier, Cadenhead and Upton*

The individual defendants have raised the defense of qualified immunity.  The burden then shifts to Plaintiff Cambell to show that: (1) the defendant violated a constitutional right, and (2) the constitutional right was clearly established at the time of the defendant's alleged

---

[4] Citing Pulczinski v. Trinity Structural Towers, Inc., 691 F.3d 996 (8th Cir. 2012), Plaintiff Utter argues that for a valid FMLA claim, she need not show any discriminatory intent.  Plaintiff is mistaken.  In describing different types of FMLA claims, the Eighth Circuit in Pulczinski noted that discriminatory intent need not be established to prove an *interference claim*.  Id. at 1005.  The Pulczinski court recognized that to prove a retaliation claim, a plaintiff must show "that the employer was motivated by the employee's exercise of rights under the FMLA."  Id. at 1006.

misconduct. As the court held above, Ms. Campbell has not shown that any of the Defendants violated a constitutional right.

Moreover, as to whether the alleged infringed right was clearly established, the court is not to "define clearly established law at a high level of generality." Sheehan, 135 S.Ct. at 1775-76. Each individual defendant was in the same position – they knew of complaints about Ms. Utter's frequent tardiness and her leaving her students without instruction or prepared lesson plans for the substitute teachers. They did not know of her FMLA leave. Ms. Campbell has cited to no authority showing she has a clearly established constitutional right that would prevent them from voting on whether to rehire her based on these facts. Mr. Cadenhead, Ms. Colclazier and Mr. Upton are entitled to qualified immunity.

**STATE CLAIMS**

As the court has granted summary judgment as to the remaining federal claims, the court declines to retain supplemental jurisdiction over the remaining state claims. Accordingly, the OMA claim and the claim for intentional interference with prospective business interests are remanded to the District Court of Seminole County Oklahoma.

**CONCLUSION**

The motion for summary judgment [Docket No. 26] is GRANTED IN PART. The federal claims are dismissed against all Defendants. The individual defendants are also entitled to qualified immunity on the § 1983 claims. The state claims are remanded to the District Court for Seminole County, Oklahoma. Defendants' motion to exclude Plaintiffs' witnesses or for extension of time [Docket No. 31] and motions in limine [Docket Nos. 32 and 37] are MOOT.

**IT IS SO ORDERED** this 15th day of December, 2016.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**